Filed
D.C. Superior Court
03/27/2020 14:12PM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

*TIFFANY FRANCES HENRY*                    Case Number: _____

vs                                        Date: _____

*REYNOLDS & ASSOCIATES, INC. ETAL* ☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* | Relationship to Lawsuit |
| *JOHNNY BARNES* | ☒ Attorney for Plaintiff |
| Firm Name: | |
| *LAW OFFICE OF JOHNNY BARNES* | ☐ Self (Pro Se) |
| Telephone No.:        Six digit Unified Bar No.: | ☐ Other: |
| *202)882-2828*         *012985* | |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury          ☒ 12 Person Jury

Demand: $ *2,000,000 00*                    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED *NONE*

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

## A. CONTRACTS

COLLECTION CASES

☐ 01 Breach of Contract      ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty      ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument   ☐ 27 Insurance/Subrogation                ☐ 26 Insurance/Subrogation
☐ 07 Personal Property            Over $25,000 Pltf. Grants Consent         Over $25,000 Consent Denied
☒ 13 Employment Discrimination ☐ 07 Insurance/Subrogation               ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees        Under $25,000 Pltf. Grants Consent        Under $25,000 Consent Denied
                             ☐ 28 Motion to Confirm Arbitration
                                 Award (Collection Cases Only)

## B. PROPERTY TORTS

☐ 01 Automobile              ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion              ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

## C. PERSONAL TORTS

☐ 01 Abuse of Process        ☐ 10 Invasion of Privacy          ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection ☐ 11 Libel and Slander                Not Malpractice)
☐ 03 Assault and Battery     ☐ 12 Malicious Interference       ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution    ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation) ☐ 14 Malpractice Legal         ☐ 20 Friendly Suit
☐ 06 False Accusation        ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest            ☐ 16 Negligence- (Not Automobile, ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                       Not Malpractice)             ☐ 23 Tobacco
                                                              ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

# Information Sheet, Continued

## C. OTHERS

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

## II.

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

## D. REAL PROPERTY

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_Johnny Barnes_
Attorney's Signature

_27 March 2020_
Date

CV-496/ June 2015

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

_TIFFANY FRANCES HENRY_ _____
Plaintiff

vs.

Case Number _____

_REYNOLDS & ASSOCIATES, INC._ _____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_JOHNNY BARNES_ _____
Name of Plaintiff's Attorney

_301 "G" STREET, S.W. #B101_
Address
_WASHINGTON, D.C.   20024_
_(202) 882-2828_
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.    ኣማርኛ ኣብ ገፅ ኣስተርጓም (202) 879-4828    ဘာသာဝန်ဆောင်

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                          Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

_TIFFANY FRANCES HENRY_
_____
Plaintiff

vs.

Case Number _____

_CHARLES M. REYNOLDS JR._
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_JOHNNY BARNES_
_____
Name of Plaintiff's Attorney

_301 "G" STREET S.W. #B101_
_____
Address

_WASHINGTON, D.C.   20024_
_____

_(202) 882-2828_
_____
Telephone

翻譯請打電話 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.       አማርኛ ለመተርጎም ይደውሉ (202) 879-4828      ......

Clerk of the Court

By _____
Deputy Clerk

Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

_TIFFANY FRANCES HENRY_
Plaintiff

vs.

_REESA MOTLEY REYNOLDS_
Defendant

Case Number _____

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_JOHNNY BARNES_
Name of Plaintiff's Attorney

_301 "G" STREET S.W. #B101_
Address

_WASHINGTON D.C.    20024_

_(202) 882-2828_
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bản dịch, hãy gọi (202)879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요.          ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828          ይደውሉ

Clerk of the Court

By _____
Deputy Clerk

Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | |
|---|---|
| **TIFFANY FRANCES HENRY** : | |
| **2575 IRVING STREET, N.E.** : | |
| **WASHINGTON, D.C.      20018** : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| **REYNOLDS & ASSOCIATES, INC.,** : | |
| **dba THE FAIRVIEW** : | |
| **1430 "G" STREET, N.E.** : | |
| **WASHINGTON, D.C.      20002,** : | **Case Number** |
| : | |
| **CHARLES M. REYNOLDS, JR.** : | |
| **1430 "G" STREET, N.E.** : | |
| **WASHINGTON, D.C.      20002,** : | |
| : | |
| **REESA MOTLEY REYNOLDS** : | |
| **1430 "G" STREET, N.E.** : | |
| **WASHINGTON, D.C.      20002.** : | |
| : | |
| Defendants. : | |
| : | |

## COMPLAINT FOR DISCRIMINATION, DAMAGES AND JURY DEMAND

Plaintiff, Tiffany Frances Henry, brings this action against Defendant Reynolds and Associates, Inc., doing business as "The Fairview". The allegations herein are based on the personal knowledge of Plaintiff, and on information and belief.

## I.      INTRODUCTION

Plaintiff's race, ethnicity, academic achievements, source of income; family and cultural background, set her apart from most other residents and all staff --- predominantly African American --- at The Fairview. These protected characteristics under the Constitution of the United States, the District of Columbia Human Rights Act and applicable Federal Statutes have resulted in the discriminatory actions against Plaintiff by Defendants and disparate treatment that is the subject this Complaint.

*Relevant Factual Background*

Unlike the residents and Staff of the Fairview, in her developing years, Plaintiff attended various highly competitive schools, including the Chinese School and was a straight "A" student throughout, piano enthusiast; soccer, basketball and track athlete, with eleven athletic letters; Girl Scout; Honor Roll and National Honor Society Student.  Camping, fishing, hiking, boating, vacation bible school, church and athletic camps were all part of her upbringing.  She was a model student and daughter.  At an early age, she tragically lost her Grandmother to a drunk driver and coped with that loss by be becoming active with Mothers Against Drunk Driving.  Her home during those years was smoke and alcohol free. A graduate of Virginia Polytechnic Institute and State University in Blacksburg Virginia, she earned a B.S. in Business Management – Entrepreneurship; a B.A. in Fashion Design and Merchandising/Apparel Design; and a Minor in Green Engineering.  Plaintiff's post-graduate life was mainstream and uneventful with respect to matters involving the law, and she had never been convicted of any crime.  As a student, there came a time when she began to experiment with Cannabis which led to her arrest. Because of the scope of her experimentation and the quantity involved, her Case was transferred from D.C. Superior Court to Federal Court.  She is a First Offender, who faced prosecution due the Federal Government's continued emphasis on targeting marijuana.  At this writing, she has pled guilty to the Federal Charges and is awaiting sentencing.  At the time of her arrest and detention, she resided at the Waterside Towers Apartments; located at 901 – 6th Street, S.W. in the District of Columbia.  She was housed at The Fairview for two years.  There is a striking, discernable and quite apparent juxtaposition between the manner in which the Fairview treated Plaintiff and all other of its residents during Plaintiff's residency.  The Fairview is not immune to judicial scrutiny.  Importantly, imagine how the Fairview treats its residents generally while treating this unique resident excessively and intolerably.

## II.    THE PARTIES

1. At all times relevant to this action, Plaintiff is a mixed Caucasian and Asian American Woman --- the only Caucasian and Asian mixed individual who resided in the Facility operated by Respondent.[1]  Plaintiff was housed at the Fairview Residential Re-entry Center (formerly known as halfway houses) pending various marijuana distribution charges, a non-violent crime that has since been de-criminalized in the District of Columbia.[2]  With her Plea, Plaintiff, at this writing, has been released from the Fairview and is awaiting sentencing.

2. At all times relevant to this action, Defendant Reynolds & Associates, Inc. operated "The Fairview," the only residential facility for women in the District of Columbia.  Under contract with the D.C. Department of Corrections (D.C. DOC) and the Federal Bureau of Prisons (FBOP), this 60-bed program serves pre-trial, court ordered sentencing, electronic monitoring and D.C. Department of Corrections residents and is a Residential Reentry Center (RRC).   Mr. Charles Reynolds, the CEO of Reynolds & Associates ("Reynolds') and Ms. Reesa Motley Reynolds are co-owners.

   RRCs are contracted through FBOP to provide a safe, structured, supervised environment, and programs that help inmates awaiting release to rebuild their lives through employment counseling, job counseling, job placement, financial management assistance, housing placement assistance, assistance with access to medical and mental health care and treatment substance abuse counseling and treatment referrals and other programs and services.  RRCs are designed to help

---

[1] There was one Resident from Laos and occasionally a few Latino and Hispanic Residents.
[2] While there is a pending charge for possession with intent to distribute cocaine in the indictment, the evidence shows that it was others, arrested concurrently and not Plaintiff who possessed and distributed that substance.

inmates gradually rebuild their ties to the community and facilitate supervising ex-offenders' activities during this readjustment.

The stated mission of Defendants is, in part, to prepare persons in custody for return to the community as more self-supporting, contributing members by offering services in the area of counseling, drug education, relapse prevention and life skills development...to assist adult female offenders, in developing positive life patterns that translate into a successful reentry, into the community.  As stated in the Resident Handbook, Fairview operates from the stance that, "the effectiveness of [the] program is dependent upon staff and residents working together, to achieve the positive goals of the rehabilitation process."

According to a 22 July 2019 Inspection Report issued by the D.C. Corrections Information Council (CIC), "Fairview staff reported that residents typically spend three to six months under the supervision of Fairview. There is no minimum time requirement; however, the maximum time that a resident may spend at Fairview is one year.  In the time that residents spend at Fairview, they work with staff in order to progress through different phases of the program, which are intended to prepare them for life post-release."   As noted, Plaintiff was kept at the Fairview for two (2) years, twice the stated maximum time.

The Fairview has a staff of approximately 17 persons and their positions and responsibilities are outlined in the CIC report.  Notably, there are eight (8) Resident Monitors who have the most interaction with residents on a daily basis and are responsible for security measures including pat downs; property searches; checking residents' ingress and egress from the facility; supervising resident chores; resident medications; issuing passes; and assisting in organizing resident activities.

3. At all times relevant to this action, Defendant Charles M. Reynolds, Jr. served as Co-Owner and Chief Executive Officer of Reynolds & Associates and was the agent, servant, employee, partner, joint venturer or surety of the other Defendants and was acting within the scope of said agency, employment, partnership, venture or suretyship, with the knowledge or consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

4. At all times relevant to this action, Defendant Reesa Motley Reynolds served as Co-Owner of Reynolds & Associates was the agent, servant, employee, partner, joint venturer or surety of the other Defendants and was acting within the scope of said agency, employment, partnership, venture or suretyship, with the knowledge or consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

## III.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to the D.C. Code §§ 1 1-921.  This Court has jurisdiction over Defendants pursuant to D.C. Code Ann. §§ 13-422 and 13-423, as Defendants do business in the District of Columbia (directly or through agents), have an interest in property located in the District of Columbia, have responsibility for business done in the District of Columbia, and have caused injury in the District of Columbia.

2. Defendants derive substantial revenue from services rendered in the District of Columbia, have sufficient minimum contacts with the District of Columbia to be sued in this jurisdiction and have intentionally availed themselves of the markets and services of the District of Columbia by doing business here.

3. Venue is appropriate in the District of Columbia given that the events and omissions giving rise to this action took place in the District of Columbia.

## NATURE OF THE ACTION

1. Plaintiff's Complaint contains several elements covered in the United States Constitution, the District of Columbia Human Rights Act of 1977, as amended ("Act') and applicable Federal statutes and laws. These are detailed below – (1) Discriminatory actions and disparate treatment; (2) mental and physical anguish, pain, and suffering; (3) embarrassment, humiliation, and indignity; (4) retaliation; and (5) subterfuge.

2. Plaintiff fits into the following "Protected Traits" under these varied laws:

   a.   Race (Asian or Oriental mixed with Caucasian);

   b.   Color (fair skinned);

   c.   National Origin (Chinese);

   d.   Personal Appearance (manner of dress; 6 feet tall)

   e.   Matriculation (College Graduate); and

   f.   Source of Income (from an upper middle class income family)

## FIRST CAUSE OF ACTION – DISCRIMINATION AND DISPARATE TREATMENT

1. Right to Counsel – At the outset, it is important to note that Staff of the Fairview regularly resisted allowing Plaintiff to meet with Counsel.  Under both the D.C. Administrative Procedure Act, D.C. Code § 2-509 (b) and the D.C. Human Rights Act of 1977, D.C. Code § 2-1403.12, a Party has the right to counsel.  It has been the experience of the undersigned Counsel and other Counsel for Plaintiff, including her Criminal Defense Counsel that, for no apparent, good reason, Staff for the Fairview has at times been a barrier to Plaintiff's efforts to meet with Counsel.  This is particularly problematic when it comes to preparation.   And, when Plaintiff has been allowed to meet with Counsel, she faces retaliation, apparently in an effort to discourage her from seeking to meet with Counsel.  Privileges were taken away when Plaintiff met with the

undersigned Counsel and other Counsel.  No other Resident faced this treatment.

2. The District of Columbia Human Rights Act protects citizens from discrimination based on the classifications listed by Plaintiff above.  Indeed, the D.C Human Rights Act of 1977, as amended, declares that: "Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations."  (D.C Code § 2–1402.01.).  The Fairview is a public accommodation.

3. Plaintiff contends that as a result of the traits or characteristics listed, she was subjected to unlawful discriminatory and disparate treatment that denied her the full and equal enjoyment of available services and benefits as other residents. Comments from Staff and some residents label her as the "Little Rich Girl" (despite the fact that she is 6 feet tall); mock her ethnicity, her appearance and her educational level.

4. The Fairview Handbook (provided to each resident at their time of entry into the Facility) establishes the benefits and services provided to residents consistent with the RRC program goal of assisting its population in developing positive life patterns that translate into successful re-entry into the community.  These services and benefits were routinely and arbitrarily denied to Plaintiff.  Despite being facially neutral, implementation of the stated policies in The Fairview 2018 Revised Handbook by Staff, result in discriminatory and disparate treatment of her as the sole non-African American, mixed Caucasian and Asian, college-educated, middle class resident of the facility.  Following are specific examples of the unfair and unequal treatment of Plaintiff which include, but are not limited to:

5.  The language of Title II of the Americans with Disabilities Act (ADA) is succinct: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. Plaintiff was regularly and routinely denied access to health care; medicines and prescriptions - Plaintiff suffers from several diagnosed health issues including chronic gastro-intestinal problems; severe acne; and PTSD.  Staff of the Fairview often stated to her that these conditions are "imaginary" and therefore do not require medical attention.  As a result of this attitude, despite having health care coverage, Plaintiff, unlike other Residents of Fairview, was routinely denied travel privileges to attend Doctors or clinics.  She was denied access to dental appointments, at times during dental emergencies.  The unpredictability of scheduled medical appointments is demonstrated by inexplicable Staff changes to Plaintiff's schedule, causing her to miss critical medical appointments.

6.  Additionally, Pages 13 and 14, Section 27 of The Fairview 2018 Revised Handbook, in two paragraphs, sets out the procedures governing medication and prescriptions.  Under the Handbook, the Resident Monitors at The Fairview manages and controls the dispensing of medicines, including those prescribed.  Plaintiff's prescribed medications or OTC medicines were not given to her at all or when given, not at the times prescribed for them to be taken.

7.  Access to Specialized Diet - Due to her severe, chronic gastrointestinal problems, Plaintiff has a very restrictive diet and pays very close attention to what she eats.  Meals and Special Diets are governed by two paragraphs, at Page 12, Sections 23 and 24 of The Fairview 2018 Revised Handbook.  Staff mocked her demands for gluten-free foods as part of her "Little Rich Girl issues" and caused Plaintiff to be repeatedly exposed to food items that are hazardous to her

health.  One incident among many typifies the precarious problem of being provided with food offerings that create health hazards.  In a conversation with Staff about food packed for the previous day, Plaintiff told a Staff member that the food items contained gluten. Staff then asked how Plaintiff knew that, and Plaintiff replied that the label clearly states it has wheat flour in the ingredients.  Staff insisted that wheat flour is just the color of flour, which they and Plaintiff knew to be totally incorrect. When Plaintiff was questioned about what she did with the items, she informed Staff that she discarded them. Staff essentially cross-examined her about the situation instead of correcting the problem.  Other residents of Fairview at the time can and will bear witness to this and similar exchanges between Plaintiff and Staff concerning food.  It is dangerous to Plaintiff's health if she does not get the proper intake of food.  Indeed, to avoid hunger, Plaintiff spent $200 a month of her own money to purchase and intake food.

8.  Telephone Privileges  - The Fairview Handbook (Revised Edition, 2018), Page 10, Sections 14 and 15, allows residents to have cellular phones, so long as cell phones are not used for internet access or have cameras.  In addition, the facility has landline phone(s) which residents may use. Without explanation, Plaintiff was denied use of phones during her stay at Fairview, while other residents freely had access to phones.

9.  Electronic Communication Equipment - The Revised Fairview Handbook Edition makes no mention of Electronic Communication Equipment.  However, the CIC report indicates that the Facility includes a computer lab in the basement that is available for limited internet searches for jobs and housing.  Nonetheless, for no valid reason, Staff of the Fairview restricted such use by Plaintiff, unlike with other residents.

10. Chores at Facility - While there is no provision in The Fairview 2018 Revised Handbook governing work and chore assignments, residents are assigned work and chores while housed in

the Facility.  Plaintiff, unlike other residents, was assigned the most menial chores that are

considered punitive by the residents. These types of chores were disproportionately assigned to

Plaintiff. Moreover, chores were assigned to her at times that interfered with her ability to

exercise many of the other necessities and privileges accorded to other residents.

11. Employment  - Under Section 36, Page 16 of The Fairview Revised Handbook, "All able

[residents] are expected to secure full-time employment/education; one (1) or two (2) jobs,

totaling forty (40) hours per week."  The CIC report states that 83% were employed or in

programming and that it takes on an average 30 days for resident to find employment.  Plaintiff

was not among the 83%, despite her qualifications. This is due to the fact that she was denied

egress from and ingress into the Facility to obtain and keep employment.  Instead, Staff

recurrently interfered with her schedule, making it impossible to meet the strict time

requirements of employment.  There are times when, purportedly as an act of discipline, Staff

will delete altogether permission for her to meet her work schedule.  For example, during one

week, her schedule was deleted twice.  She was often made late for work, awaiting release by her

Case Worker.  Punctuality was near impossible.  And, job improvement and growth was also

near impossible.  Plaintiff learned of a very important position with the prestigious Firm,

Bozzuto, for which she qualified.  But, Staff would not allow her to use available computers in

order to undergo the interview, and that job was lost.  In fact, many opportunities were lost, like

the Georgetown PIVOT Program, with it's awarding of an important certificate to those who

complete it and financial remuneration during the course.  After having been congratulated by

Staff for being selected to the prestigious Georgetown University PIVOT Program, she was

subsequently informed that she could not participate.  In addition, residents who are not working

may undertake volunteer service, yet Plaintiff, unlike other residents, was denied all volunteer

opportunities.  She was the only Resident, among those who volunteered, who was not allowed attend the Catholic Charities Support Group.

12. Travel Passes and Transportation - Staff issues passes so residents can travel to approved activities.  Sign in/sign out procedures are regulated by Section 40 on Pages 18 and 19 of The Fairview 2018 Revised Handbook, and are used to monitor, keep track of, and as a security measure for residents.  This Section is modified by two other Sections of The Fairview 2018 Revised Handbook, Sections 41 and 42, found on Page 19 and related to Travel and Driving Privileges, respectively.

13. Plaintiff was treated differently too for these purposes.  Her ability to develop was cloistered as a result.  This had the chilling effect of confining her to the facility and at times prevented her from preforming functions other Residents are able to perform. Notwithstanding her complaints, Staff seemed unwilling to work with her to ensure that she had the same level of travel safety and privileges (passes) as other residents.

14. Safety and Security Measures - Plaintiff believes that Staff's apparent disregard for her safety was a part of her punishment, as they saw it, because of her protected traits.  The Fairview 2018 Revised Handbook contains information related to Safety, at Page 7, Section 5.  This section covers banned items, emergency assistance and fire procedures.  Physical danger from other residents is not addressed.  Plaintiff was been under constant danger of physical harm from a particular resident who targeted her with threats, intimidation and warnings of imminent bodily injury and harm.  This particular resident (whose name is here withheld) was housed at Fairview during Plaintiff's early days.  Those same problems persisted at that time, and Plaintiff was compelled to report her to Staff and put her safety concerns in writing.  That resident was, at one point, returned to prison, harboring the belief that Plaintiff caused that return.  Unfortunately,

during Plaintiff's stay at the Facility, that resident returned from prison and was placed once again at The Fairview. She continually terrorized Plaintiff, with even greater intensity than before. Worse, this resident was housed along the same hallway as Plaintiff, with common access to a shared bathroom.

15. Moreover, in the days following her return, Plaintiff recorded many unwelcome encounters that left her in fear of her safety including a recent incident that occurred when Plaintiff was returning to the Facility from a work-related activity. This resident confronted Plaintiff in a menacing and physically threatening manner, leaving her in a state of shock. The resident reminded Plaintiff that Plaintiff had complained about her in the past, leading to her return to jail. Ms. Henry was subsequently informed by Staff that in reality, it was not her write ups that caused this resident to be returned to jail, but the write ups of Staff, concerned with their own safety, that triggered that action. Notably, in the days prior to being re-housed at The Fairview, this resident was ordered by the Court and undertook a competency examination at Saint Elizabeth's Hospital in the District of Columbia.

16. Since the resident's return, the Resident Monitors/Control Room staff cautioned Plaintiff and advised her to be careful and prepared for self-defense if the resident physically confronts her. Staff also stated to Plaintiff that verbal and physical confrontation is part of the life of those confined, expressly placing the burden for her own safety solely on Plaintiff. The Fairview 2018 Revised Handbook, at Page 12, Section 19 empowers Staff to immediately remove individuals who cause "Violence or threats of violence, fighting and/or abusive language, "emphatically stating that such activity, "…will not be tolerated."

17. Several Facility staff and residents observed these foreboding and intimidating outbursts from this resident directed at Plaintiff and can recount what they witnessed. For her part, Plaintiff

avoided the resident, did not pass her in hallways, was not in the same room with her, checked the bathroom to ensure that the resident was not there before she entered, and avoided making eye contact with her.  Staff did not express any concern whatsoever for Plaintiff's safety. The only action taken by staff was to move the resident to a room farther away, when Plaintiff submitted a Resident Internal Communication Form to Staff, expressing her concerns for her safety and questioning the basis for the return of this resident to The Fairview.  The effect of this Staff action only resulted in the resident adding yet another resentment against Plaintiff. Moreover, the resident's new room location was on the same floor, situated across from the only telephones available to residents and in route to the bathroom and Plaintiff's room.

18. Disciplinary and Grievance Process  - Discipline and the Disciplinary Process are governed by Sections 50 and 51 at Pages 22 and 23 of the Handbook.  The CIC Report also details the Grievance and Disciplinary procedures that Fairview personnel reports it follows.    Contrary to the steps and process detailed in the CIC report, sanctions and disciplinary actions were imposed on Plaintiff with no explanations, no proper investigation or hearings or calling witnesses, no written incident reports and reasons for sanctions or disciplinary actions, much less recommended actions for her improvement. Other residents receive details of their disciplinary action and pathways to improvement.  Plaintiff contends that a pattern of arbitrary actions went against the good behavior she displayed.  Plaintiff believes that, due in part to these disciplinary actions and sanctions imposed, Plaintiff was lodged at the Facility longer than all current and past residents well beyond the typical six (6) months to a year Staff reported to the CIC.

19. Arbitrary disciplinary measures were constantly imposed on Plaintiff, notwithstanding the fact that over the two-year period (with urine testing twice weekly), she never failed such testing; and did not cause any major or significant disciplinary problems.  The evidence will show that any

alleged infractions by Plaintiff are a result of her race, ethnicity, appearance, educational status and family income background.

20. If, as a result of the unlawful discriminatory acts or practices of the respondent, the prevailing complainant was required to undergo medical or psychiatric treatment, or where no medical treatment was undergone, there exists evidence of anguish, pain, and suffering (e.g., headache, nausea, nervousness, insomnia, irritability, weight gain), he or she shall be entitled to damages proved by competent medical evidence, as defined in § 213, in addition to any actual costs for medical attention as defined in § 205. (4DCMR 210.1).

**SECOND CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

21. Plaintiff repeats and re-alleges each and every allegation made in paragraphs 1 through 20.

22. Plaintiff was housed at The Fairview since December 11, 2017, and according to her Therapist, her mental health took a measurable downturn when she became a resident there. She suffers from post- traumatic stress syndrome, an affliction she did not have before entering the Fairview. On a daily basis, Plaintiff experienced, hiding out, being stalked, taunting, verbal threats and constant fear.  Plaintiff states that, "Every day I wake up not knowing how much longer I will have to survive Fairview, but that I will have to conquer that day until I [lay] my head down again that night."  Regular lack of sleep and inability to obtain proper restricted diet has had a marked physical health impact too.  Plaintiff developed acne, and chronic gastro-intestinal problems since entering the Fairview. These physical conditions are commonly known to be a result of mental and emotional stress.

23. Embarrassment, humiliation, and indignity - The overt and insidious, untrue derogatory remarks from Staff and some residents of a racial, ethnic nature coupled with the often used label of

"Little Rich Girl" caused embarrassment, humiliation and indignity to Plaintiff on a daily basis. These remarks were made openly, willfully, and in a repetitious, harassing manner.

24. Retaliation - The Fairview's stated policy at Section 49, Page 22 of The Fairview 2018 Revised Handbook encourages residents to report suspected or actual wrongful conduct by its Staff.  Yet, Plaintiff's suggestions to help improve the Facility were met with reprisals and retaliation, including withholding the disparate treatment described in the foregoing paragraphs; withholding of Staff recommendations to the Criminal Court for Home Confinement as permitted by Section 2, at Pages 4 and 5 of the Handbook.

25. Plaintiff's concern for the conditions of the Facility, when brought to the attention of Staff was marked by a noticeable and discernable change in the manner in which Plaintiff was treated. That change ultimately led to increased disciplinary actions by Staff, fewer privileges, less advancement, punitive pass decisions and a miserable life, at a Facility that boasts of improving the lives of its residents.  Each day, Plaintiff was fearful that the filing of a Complaint would result in further retaliation by Staff making just such a recommendation and fears for her physical safety from the resident who she references herein.

26.  Subterfuge - Staff actions were no more than a subterfuge for wholly discriminating against Plaintiff because of her Protected Traits, under the color of policy guidelines.  The discriminatory, unlawful actions continue to have, a severe detrimental effect on Plaintiff's physical and mental health; her general welfare; and indeed her life.  Fairview denied her the very benefit that they are contracted with public dollars to provide - assistance to inmates who are nearing release to rebuild their ties to their community (which includes family and friends). The fact that Plaintiff was in the program twice as long as any other resident, well beyond the Facility's stated accomplishment, is *prima facie* evidence that something was not right. Any

attempt to justify or explain by blaming Plaintiff's behavior fails because, had her behavior rose to that level, she would have been recommended for return to DOC.

27. If an inmate is placed in and accepted by an RRC, he or she will be released on an agreed upon date, between the DOC and the specific reentry center.

28. In addition, in accordance with a FBOP[3] May 24, 2013, memorandum entitled "Guidance for Home Confinement and Residential Reentry Center Placements,",  for low need/low risk inmates such as Plaintiff, home confinement is the preferred pre-release option to reintegrating inmates more quickly into their communities.

29. Defendant's conduct, throughout the course of this matter, over the years, was extreme and outrageous and was intentional and reckless and caused Plaintiff severe emotional and physical distress.

30. The chronology of misdeeds by Defendant have been aimed at causing Plaintiff to suffer as punishment, like no other resident of the Facility.

31. During this time, all of Plaintiff's complaints not only fell on deaf ears but were met with retaliatory action by Defendant.

32. These misdeeds and others have caused Plaintiff to be traumatized and to suffer severe emotional and physical distress.

33. Plaintiff has been damaged by Defendant's actions and representations in an amount to be proven at trial.

**THIRD CAUSE OF ACTION – VIOLATION OF TITLE 42 U.S.C., § 1983**

34. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 33.

---

[3] Plaintiff was not in the Federal Bureau of Prisons; she was in the D.C. Department of Corrections.  However, FBOP Regulations are instructive inasmuch as she is being prosecuted in Federal Court.

35. Title 42 U.S.C., § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

36. As has been indicated, Defendants are under contract with the D.C. Department of Corrections (D.C. DOC) and the Federal Bureau of Prisons (FBOP), and as such their actions are under color of law.

37. Defendants denied Plaintiff equal protection in violation of the United States Constitution and § 1983 because of her traits and protected classes, as described.

38. Plaintiff has been injured as a result of Defendants' acts and/or omissions, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION – VIOLATION OF TITLE VI OF THE 1964 CIVIL RIGHTS ACT**

39. Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 38.

40. Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d et seq., prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  The instant programs of Defendants receive federal financial assistance.

41. Any fair analysis of the facts in the instant matter, as described, lead inevitably to the conclusion and the presence of a *prima facie* case of discrimination and disparate treatment.

42. As a consequence, it is within the jurisdiction of this Honorable Court to mandate that appropriate District of Columbia Government authorities take steps necessary to ensure compliance by Defendant with Title VI.

43. Plaintiff has been injured as a result of Defendant's acts and/or omissions, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION – UNLAWFUL DETENTION**

44. Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 43.

45. Notwithstanding an Order from a Federal Court that Plaintiff be finally released from the Fairview --- after two years, more time spent than any other resident then and now --- Staff of the Fairview failed and refused to release Plaintiff as instructed, instead choosing to release her the next day.

46. Unlawful detention occurs when an entity or individual fails and refuse to release another individually, although lawfully required to do so.

47. On that occasion and others, Defendant has failed and refused to allow the release of Plaintiff.

48. Plaintiff has been injured as a result of Defendant's acts and/or omissions, in an amount to be proven at trial.

**CONCLUSION**

In The Fairview 2018 Revised Handbook, at Page 4, under the very first Section, Titled "Introduction," it states, "This program exists to assist adult female offenders, in developing positive life patterns that translate into successful re-entry into the community. The effectiveness of this program is dependent upon staff and [residents] working together to achieve the positive goals of the rehabilitation process." In addition to all of the barriers and hurdles placed before Plaintiff by Staff described above, each day she and other residents faced hazardous mold, leaking pipes, crumbling ceilings, rodents,

vermin, bug bites and other conditions affecting the sanitation and safety of the Facility.  Decent, safe and sanitary living should be the goal; but those things come with a price tag at this privately run Facility.  For Plaintiff, the words from the Introduction rang hollow.  Her health, progress, educational and employment opportunities and hope for the future were diminished at The Fairview.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

1. Grant Plaintiff judgment on her Complaint against Defendant;

2. Find that Defendant violated the District of Columbia Human Rights Act of 1977, as amended, and award damages to Plaintiff in the amount of $250,000;

3. Find that Defendant violated the Equal Protection Clause of the United States Constitution and award damages to Plaintiff in the amount of $250,000;

4. Find that Defendant unlawfully detained Plaintiff and award damages to Plaintiff in the

5.  amount of $250,000;

6. Find that Defendant violated Title 42 U.S.C., § 1983 and award damages to Plaintiff in the amount of $250,000;

7. Find that Defendant violated Title VII of the Civil Rights Act of 1964 and award damages to Plaintiff in the amount of $250,000;

8. Grant Plaintiff judgment forever enjoining Defendant from interfering with the rights of Plaintiff;

9. Finding that Defendant caused Plaintiff to have emotional distress, confusion, uncertainty and other such infirmities that have affected her health and awarding Plaintiff damages in the amount of $500,000;

10. Awarding Plaintiffs appropriate compensatory damages, treble damages and punitive damages;

11. Awarding Plaintiff special damages in amounts to be proven at trial;

12. Awarding Plaintiff other appropriate injunctive relief;

13. Awarding Plaintiff the costs and expenses of this action, including reasonable attorneys and expert fees.

14. Granting injunctive relief against Defendant to prevent future wrongful conduct.

15. Issue an Order, instructing the District of Columbia Government to conduct an investigation of the Fairview, its Staff and Management and to take steps necessary to prevent future unlawful actions by the Fairview as detailed here and as will be demonstrated at trial.

16. Awarding Plaintiff such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by a Jury of twelve (12) individuals.

**VERIFICATION**

Pursuant to 28 U.S.C. Section 1746, I declare, under penalty of perjury that the foregoing Statements, found on nineteen pages and nineteen pages only, including this Verification Page, is true and correct, based upon my personal knowledge, recollection and beliefs, and based upon information supplied by potential witnesses to this Case.

**EXECUTED** this 11th day of March 2020 by:

/s/ *Tiffany Frances Henry*

_____

**Tiffany Frances Henry**
(Wet Signature Available Upon Demand)

Respectfully Submitted,

/s/ *Johnny Barnes*

---

**Johnny Barnes, D.C. Bar Number 212985**
*Counsel for Plaintiff*
301 "G" Street, S.W, Suite B101
Washington, D.C.      20024
AttorneyJB7@gmail.com
**DATED: 11 March 2020**                Telephone (202) 882-2828

damages;

11. Awarding Plaintiff special damages in amounts to be proven at trial;

12. Awarding Plaintiff other appropriate injunctive relief;

13. Awarding Plaintiff the costs and expenses of this action, including reasonable attorneys and expert fees.

14. Granting injunctive relief against Defendant to prevent future wrongful conduct.

15. Issue an Order, instructing the District of Columbia Government to conduct an investigation of the Fairview, its Staff and Management and to take steps necessary to prevent future unlawful actions by the Fairview as detailed here and as will be demonstrated at trial.

16. Awarding Plaintiff such other and further relief as this Court deems just, equitable, and proper.

### JURY DEMAND

Plaintiff hereby demands trial by a Jury of twelve (12) individuals.

### VERIFICATION

Pursuant to 28 U.S.C. Section 1746, I declare, under penalty of perjury that the foregoing Statements, found on nineteen pages and nineteen pages only, including this Verification Page, is true and correct, based upon my personal knowledge, recollection and beliefs, and based upon information supplied by potential witnesses to this Case.

**EXECUTED** this 11th day of March 2020 by:

/s/ *Tiffany Frances Henry*

_____

**Tiffany Frances Henry**
(Wet Signature Available Upon Demand)